# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR J. MAGANA,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 17-03413-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF COMMISSIONER FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues.[1] On April 30, 2018, the parties filed supplemental briefs. This matter now is ready for decision.

## BACKGROUND

On July 24, 2012, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning February 28, 2011. (Administrative Record ("AR") 303-318.) His applications were denied initially and

---

[1] Plaintiff's memorandum was mislabeled as a motion for summary judgment. (ECF No. 18).

upon reconsideration. (AR 185-204.)

Plaintiff appeared with counsel at a hearing conducted before an ALJ on February 18, 2015. (AR 59.) During the hearing, the ALJ noted that at Plaintiff's last examination in November 2014, Plaintiff's left eye visual acuity was 20/40. (AR 67-68.) Plaintiff testified that his vision had deteriorated since the November 2014 examination, explaining that approximately three to four weeks prior to the hearing, he had experienced "blood" in his left eye. Plaintiff did not seek medical treatment because he lacked medical insurance. (AR 68-69.) Recognizing that the medical record was incomplete with respect to Plaintiff's left eye, the ALJ ordered a consultative ophthalmology examination to see "what's going on with his left eye." (AR 70.) The ALJ then continued the hearing in order to obtain a consultative examination of Plaintiff's visual impairment. At the same time, the ALJ ordered a consultative examination by an internist. (AR 72.) After obtaining reports from a consultative ophthalmologist and a consultative internist, a second hearing was conducted on July 24, 2015, at which Plaintiff, a medical expert ("ME") and a vocational expert ("VE") testified. (AR 76-103.)

On September 2, 2015, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: diabetes mellitus with diabetic neuropathy; diabetic retinopathy with bilateral vitreous hemorrhage; status post vitrectomy of the right eye and laser treatment in both eyes; bilateral cataracts, hypertension; mild degenerative changes of the lumbosacral spine; and lumbago. (AR 39.) The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with some exertional limitations. (AR 42-43.) With respect to Plaintiff's visual impairment, the ALJ adopted the opinion of the ME and found that Plaintiff must avoid all exposure to hazards such as dangerous machinery and unprotected heights; was unable to operate moving vehicles; was unable to perform work involving frequent depth perception; and was limited to work that allows for monovision. (AR 43.) Based upon this RFC, the ALJ concluded that

Plaintiff was unable to perform his past relevant work. (AR 47.) The ALJ then adopted the opinion of the VE who testified that an individual with the RFC assessed by the ALJ would be able to perform the occupations of Stuffer, Information Clerk, and Document Preparer. (AR 48.) Accordingly, the ALJ concluded that Plaintiff was not disabled at any date prior to his decision. (AR 49.) On March 9, 2017, the Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-7.)

**DISPUTED ISSUE**

Whether the ALJ properly evaluated Plaintiff's visual impairment and its effect on his ability to perform work existing in the national economy. (ECF No. 18 at 10.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court reviews the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *See Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Garrison,* 759 F.3d at 1010; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Finally, even when an ALJ's decision contains error, it must be affirmed if the error was harmless. *Treichler*, 775 F.3d at 1099.

# DISCUSSION

## I. The evidence relating to Plaintiff's visual impairment

In his summary of the medical evidence relating to Plaintiff's visual impairment, the ALJ noted that in February 2013, Plaintiff's corrected vision was 20/50 in the right eye and 20/25 in the left eye. (AR 40, 440.) In May 2013, Plaintiff presented to the Whittier Hospital Medical Center emergency department with complaints of vision loss in his right eye. Plaintiff was diagnosed with diabetic retinopathy, central retinal artery occlusion, vitreous lifting and retinal pigment epithelial detachment. (AR 40, 454-455.) Records from Riverside Regional Medical Center showed that Plaintiff was diagnosed with proliferative diabetic retinopathy and vitreous hemorrhage of the right eye, and hypertensive retinopathy and diabetic macular edema in both eyes. (AR 40, 492-501.) In June 2013, Plaintiff's corrected vision was limited to light and movement in the right eye and 20/25 in the left eye. (AR 40, 500.) In May 2014, Plaintiff was diagnosed with bilateral cataracts. (AR 40, 627.) In August and November 2014, Plaintiff's corrected vision in his left eye was 20/40, and vision in his right eye remained limited to hand motion. (AR 40, 622, 624.)

In April 2015, after the hearing was continued to allow additional evidence regarding possible deterioration of Plaintiff's left eye. Plaintiff underwent a consultative examination by board-certified ophthalmologist David Paikal, M.D. As the ALJ noted, "[b]y that time, [Plaintiff]'s best-corrected vision was hand motion on the right and 20/100 on the left. (AR 40, 643-645.) The visual fields study showed "mild construction on the left." (AR 40, 645.) Dr. Paikal noted early cataracts in both eyes, vitreous hemorrhage in the right eye and diabetic retinopathy in the left eye. (AR 40, 643.)

In April 2015, Plaintiff also was examined by consultative internist Conception Enriquez, M.D. (AR 43-44, 630-640.) With regard to Plaintiff's visual limitations, Dr. Enriquez opined that Plaintiff could not avoid ordinary hazards in the

4

workplace, could not be exposed to unprotected heights, and could not operate dangerous machinery or motor vehicles. (AR 634, 638-639.) She further opined that Plaintiff was unable to read very small print and unable to read ordinary newspaper or book print. Plaintiff was able to view a computer screen and to determine differences in shape and color of small objects such as nuts or bolts. (AR 638.) Although the ALJ did not note it, Dr. Enriquez also performed an acuity test. Like Dr. Paikal, Dr. Enriquez reported that Plaintiff's best-corrected vision on the left eye was 20/100. (AR 631.)

Finally, the ALJ discussed the testimony of ME, Patrick G. McCaffery, M.D., noting that Dr. McCaffery substantiated that Plaintiff suffered from diabetic proliferative retinopathy with vitreous hemorrhage in both eyes. (AR 41.) In particular, the ALJ restated Dr. McCaffery's testimony that in June 2013 Plaintiff had a vitreous hemorrhage in the right eye resulting in visual acuity of hand motion and in November 2014,[2] Plaintiff's left eye showed a corrected visual acuity of 20/40. (AR 41 (citing AR 494, 622).)

## II. The ALJ erred in assessing Plaintiff's visual limitations

Plaintiff contends that the ALJ failed to properly evaluate his visual impairment and its effect on his ability to perform work existing in the national economy. (ECF No. 18 at 10-11.) Although Plaintiff's arguments in support of this contention are far from a model of clarity, Plaintiff essentially challenges the ALJ's assessment of Plaintiff's visual limitations.[3]

---

[2] Although the ALJ indicates the date as November 2013, he cites Exhibit 17F, p.3, which is a report dated November 2014. (*See* AR 622.) The Court assumes that "2013" is a typographical error.

[3] Under what purports to be a single disputed issue, Plaintiff makes varied allegations of error, the legal and factual contours of which are not always clear. Because the Court finds a remand is warranted with respect to the ALJ's assessment of Plaintiff's visual limitations, it need not resolve Plaintiff's remaining contentions.

5

In assessing the functional limitations imposed by Plaintiff's visual impairment, the ALJ adopted in full the opinion of Dr. McCaffery. (AR 44.) According to the ALJ, Dr. McCaffery's opinion was entitled to substantial weight because Dr. McCaffery is a board-certified ophthalmologist, had provided detailed and specific explanations for his opinion, and he "is the only doctor who reviewed all of the relevant medical records in evidence." (AR 45.) A review of Dr. McCaffery's hearing testimony reveals the following.

Dr. McCaffery began by testifying that he had reviewed the relevant medical evidence. (AR 79.) He then cited the following four records: the June 2013 laboratory report showing that Plaintiff's diabetes was uncontrolled; the June 2013 report reflecting that as a result of Plaintiff's vitreous hemorrhage, his right eye visual acuity was limited to hand motion; the November 2014 report showing Plaintiff's left eye had a best-corrected visual acuity of 20/40; and a report "with an apparent date of May 2013" revealing the widest diameter of Plaintiff's visual field to be 65 degrees horizontally and 60 degrees vertically. (AR 81 (citing AR 482, 494, 622, 645.) Dr. McCaffery explicitly stated that his opinion was based on a corrected visual acuity of 20/40. (AR 81-82.) Consequently, Dr. McCaffery opined that "at this time," Plaintiff's visual impairment "probably" did not equal a listing, but "eventually, he will." (AR 82.) Relying upon the same evidence, Dr. McCaffery opined that Plaintiff was monocular; he should not work in unprotected heights or operate machinery; he would not qualify for a commercial driver's license; his depth perception would be impaired; he could not assemble small parts; and he needed adequate illumination. (AR 82-83.)

The Commissioner argues that the ALJ gave proper weight to Dr. McCaffery's opinion because Dr. McCaffery is a board-certified ophthalmologist, while Plaintiff's assertions about his visual loss are merely Plaintiff's "lay interpretation of the record evidence [that] does not refute Dr. McCaffery's opinion." (ECF No. 25 at 1-2.)

The Commissioner is correct that a medical expert's opinion generally may serve as substantial evidence supporting an ALJ's findings with respect to a claimant's limitations. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, however, Dr. McCaffery's opinion did not constitute substantial evidence because he erroneously relied upon an outdated visual acuity measurement. Critically, all of Dr. McCaffery's testimony was based upon his mistaken assumption that Plaintiff's left eye visual acuity was 20/40, when – as the ALJ recognized in his summary of the evidence – the April 2015 consultative examinations revealed it had deteriorated to 20/100.

While it is within the ALJ's province to resolve ambiguities and conflicts in the medical evidence, *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), there is no apparent conflict in the medical evidence regarding Plaintiff's left eye visual acuity. Dr. McCaffery did not purport to reject the consultative examiners' clinical findings that Plaintiff's best-corrected left eye visual acuity had deteriorated to 20/100, nor does the record suggest any such basis to do so. Rather, Dr. McCaffery's failure to mention these specific clinical findings of either Dr. Paikal or Dr. Enriquez suggests that he did not consider them. Furthermore, in light of Dr. McCaffery's testimony that based upon 20/40 visual acuity in his left eye, Plaintiff "probably" did not meet a Listing but that he "eventually" would, it appears reasonably likely that the difference between 20/40 and 20/100 visual acuity would alter Dr. McCaffery's opinion about whether Plaintiff met a Listing as well as his opinion about the functional limitations imposed by Plaintiff's visual impairment.

In sum, the ALJ adopted an opinion that was unaccountably based on an outdated measurement of Plaintiff's left eye visual acuity. Consequently, the ALJ's assessment of Plaintiff's RFC with respect to his visual limitations was not supported by substantial evidence. *See Garrett v. Astrue*, 2008 WL 4350374, at *4-5 (C.D. Cal. Sept. 19, 2008) (ALJ's acceptance of the ME's inaccurate description of physician's opinion regarding claimant's IQ score "was neither reasonable nor appropriate," and

"this inaccurate proposition" could not constitute substantial evidence supporting the ALJ's finding, particularly when ALJ did not expressly reject the physician's opinion regarding claimant's IQ).

Finally, Plaintiff contends that the ALJ erred by failing to offer any reason for rejecting the visual limitations assessed by Dr. Enriquez. (ECF No. 18 at 10-11.) The Court agrees.

In his decision, the ALJ gave substantial weight to Dr. Enriquez's opinion regarding Plaintiff's manipulative limitations, and adopted them in assessing Plaintiff's RFC. (AR 44.) Although the ALJ also described Dr. Enriquez's opinion regarding Plaintiff's visual limitations – including her opinion that Plaintiff was unable to avoid ordinary hazards in the workplace and unable to read small or ordinary print – he neither adopted them nor explicitly rejected them. (*See* AR 44-45.) To the extent that the ALJ intended to reject Dr. Enriquez's opinion, he failed to provide the requisite specific and legitimate reason for doing so. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

For the foregoing reasons, the ALJ's assessment of Plaintiff's visual limitation is legally erroneous and not supported by substantial evidence in the record.

**REMEDY**

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed and factual issues remain outstanding. The issues concerning

8

Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[4]

IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 5/2/2018

ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[4] It is not the Court's intent to limit the scope of the remand.